```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


BLIND INDUSTRIES AND           *
SERVICES OF MARYLAND et al.    *
                               *
v.                             *
                               *   Civil Action No. WMN-11-3562
ROUTE 40 PAINTBALL PARK        *
                               *
  *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. INTRODUCTION

On May 21, 2011, Plaintiffs Marco Carranza, James Konechne, and Ronald Cagle traveled to the Route 40 Paintball Park, a facility owned and operated by Defendant, for the purpose of playing paintball. Plaintiffs, who are all legally blind, were not permitted to play. On December 12, 2011, Plaintiffs filed this action alleging Defendant's refusal to allow them to play paintball was a violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12182.

On December 5, 2012, the Court denied cross motions for summary judgment, opining that, while the evidence pointed to the conclusion that Defendant had violated the ADA, a finder of fact[1] could find otherwise based upon certain facts that were

---

[1] In the briefing and resolution of the summary judgment motions, the Court and the parties operated under the belief that this case would be tried to a jury. After the resolution of the summary judgment motions, the Court granted Plaintiffs' motion to strike Defendant's jury demand on the ground that there is no

then in dispute.  ECF No. 32 at 21.  Plaintiffs filed a motion to alter or amend that decision, ECF No. 34, which the Court denied for the most part.  The Court held, as it did in ruling on the initial motions, that there were disputed facts that, if resolved in Defendant's favor, would have justified Defendant's conclusion that Plaintiffs would have posed a "direct threat" to others if permitted to play paintball on May 21, 2011.  ECF No. 40 at 2.  The Court did clarify that Plaintiffs "would be entitled to some form of declaratory or injunctive relief" based upon Defendant's failure to provide them a means to access its waiver form, but stated that any decision as to the form of that relief would be held until the conclusion of the entire matter. Id.

A three-day bench trial was held February 11, 2013, to February 13, 2013.  The Court now makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

The pertinent facts concerning the following topics were set out in this Court's memorandum denying the cross motions for summary judgment: the mission of Plaintiff Blind Industries and Services of Maryland (BISM); the method of play and the inherent risks of the game of paintball; the operation of Defendant's

---

right to a jury trial given the purely equitable relief sought in this action.  ECF No. 40.

paintball facility, and the purpose and general chronology of BISM's May 21, 2011, paintball outing. This opinion assumes the reader's familiarity with those facts and this background information will not be repeated herein. The Court adopts the facts set out in its December 5, 2012, Memorandum as if fully stated herein, unless they were identified by the Court as disputed.

One of the primary material facts which was disputed, but which the Court must now resolve, is the time that the BISM group actually arrived at Route 40 Paintball Park. The Court finds it was no earlier than 12:30 p.m. and probably closer to 1:00 p.m. The Court reaches this conclusion based upon the testimony of Julian, Tom, and Miriam Maliszewski, which the Court found highly credible. This late arrival - as much as an hour after they were told to arrive - is significant in that it rendered it reasonable for the Maliszewskis to question whether the group could be given the necessary instruction and orientation in the limited time remaining in their reserved time slot.

Related to the late arrival, the Court finds that it necessarily would take more time to orient a group of blind individuals to safely play paintball than it would to orient a group of sighted individuals. Much of the standard orientation is visual, in that the participants would be shown the parts of

the paintball marker and how the marker's different features, such as the safety, work.  While this orientation could be done tactilely, it would take additional time, particularly for a group.  In addition, the Court believes, based upon the evidence presented, that blind individuals would require additional time to orient themselves to the playing field before commencing play.  Using the skills explained by Plaintiffs and Plaintiffs' expert, the Court also concludes that it is more likely than not that the members of the group could have sufficiently familiarized themselves with the layout of the playing fields to play with relative safety, but reasonable familiarization would have taken more time than that required by a sighted individual.

The Court also finds that the Maliszewskis' direct observation of the group upon arrival and their movement, once at the facility, raised legitimate concerns as the Maliszewskis made the requisite, on-the-spot, extemporaneous determination as to whether the group's participation in paintball would pose a threat to others in the group or to bystanders.  In addition to the group's difficulties navigating to the facility, Miriam Maliszewski observed one of the group members walk into a post and another almost walk off the deck outside her office.  As the Court noted in its letter order of January 15, 2013, given the shortened time to make the assessment, it is unrealistic to suggest that the Maliszewskis would have been able to

differentiate between the relative skills and abilities of the members of a group who were all wearing sleep shades.

Finally, the Court finds that there was at least some breakdown in communications between the BISM group and the Maliszewskis, fueled by the BISM group's frustration after a long walk on a hot day. While the Court can understand that frustration, it also questions how well the group members were able to explain how they would safely engage in the sport given the somewhat emotionally charged atmosphere that developed. In this regard, the Court credits the testimony of Ms. Maliszewski that at least one member of the group yelled at her and became argumentative.

From these specific findings, the Court makes several more general factual findings.

First, the Court concludes that blind individuals who have received adequate mobility training can play paintball, at least as safely as many sighted participants. The evidence supported the conclusion that the game of paintball involves certain inherent risks and that sighted individuals violate some of the safety rules that the Maliszewskis were concerned the BISM group might violate. The evidence also supports a finding that the Maliszewskis routinely attempt to enforce their safety rules on all participants.

Related to this first conclusion, the Court would add one observation. Throughout the trial, Plaintiffs and their counsel stressed that blind individuals routinely engage in activities far more dangerous than paintball, e.g., crossing busy city streets. That is certainly true and that argument would be compelling except for the fact that, in crossing a street, the danger posed is essentially a danger to the blind person themselves, not to others. As Plaintiffs have stressed throughout this litigation, the relevant inquiry in assessing the applicability of the direct threat defense is the potential harm that a blind individual's participation in a particular activity poses to others, not to themselves.

Second, the Court concludes that, if confronted with the decision in a less hurried and emotionally charged context, Defendant would likely have permitted the members of the BISM group to play paintball. Defendant's witnesses provided credible testimony concerning efforts they have made in the past for individuals with various disabilities to play at their facility. There is no reason to believe that they would not have done the same for the BISM group had there been sufficient time to make the requisite determination that they could participate safely.

Third, the Court concludes that on May 21, 2011, there was insufficient time to make that determination. In previous

pleadings, Plaintiffs have stressed the importance of a "fact intensive," "individualized" assessment of the "nature, duration, and severity of the risk, and the probability that the potential injury will occur." ECF No. 22 at 26. Plaintiffs' late arrival on a very busy Saturday afternoon simply did not provide an adequate window of time to make that assessment.

Finally, while not dispositive of any issue except perhaps the issue of attorneys' fees had Plaintiffs prevailed in this litigation, the Court expresses its concern that Plaintiffs elected not to participate in the mediation process that was offered by the Baltimore County Police Department. Plaintiffs have provided no explanation for their refusal to follow through with that process. The Court believes that, had Plaintiffs participated in that mediation process in good faith, it is more likely than not that an agreement could have been reached whereby Plaintiffs would have been able to play paintball without the need for litigation.

## III. CONCLUSIONS OF LAW

Like the general factual context of this action, the Court's memorandum denying the cross motions for summary judgment laid out the basic legal parameters of Plaintiffs' claims and Defendant's defenses. Those general parameters will not be repeated here, but are incorporated herein by reference. The Court, however, finds a decision of the Court of Appeals for

7

the Ninth Circuit, not previously discussed, Lockett v. Catalina Channel Express, 496 F.3d 1061 (9th Cir. 2007), particularly instructive.

In Lockett, the defendant operated a public ferry boat service. In response to a request from a frequent passenger for an area free of animal dander, the defendant instituted a policy prohibiting all animals from a particular area of the ferry, the Commodore Lounge. The Commodore Lounge was a small, semi-private seating area which offered more comfortable seats, complimentary beverages, and priority boarding for an additional ten dollars per ticket. About a year after defendant instituted this policy, the plaintiff, a blind individual who travels with a guide dog, sought to purchase a ticket for the Commodore Lounge. Because of the no animal policy, the defendant refused to sell her a ticket for the Commodore Lounge and, instead, sold her a general passage ticket. Two weeks later, the defendant changed its policy and permitted service animals in the Commodore Lounge.

The plaintiff filed a complaint seeking damages and injunctive relief under the ADA and California law alleging that being denied a ticket to the Commodore Lounge was "embarrassing and frustrating and humiliate[ing.]" 496 F.3d at 1064. The district court granted summary judgment for the defendant on the ground, inter alia, that defendant's refusal to admit the

8

plaintiff's service animal to the Commodore Lounge was permissible under the ADA based on health and safety concerns. Id. On appeal, the Ninth Circuit affirmed "on the narrow ground that [the defendant], when suddenly faced with a possible threat to the health and safety of its passengers, made a one-time reasonable judgment under 28 C.F.R. § 36.208[2] while it investigated the competing interests." Id. at 1063.

The Ninth Circuit explained that the plaintiff's request "created a dilemma" for the defendant as the no animal policy was adopted in response to a passenger's assertion of an allergy to animal dander. Id. at 1065. "Accordingly, [defendant's] employees had to decide on the spot whether to potentially expose passengers in the Commodore Lounge to dander or to ask [the plaintiff] to ride in the general passenger area." Id. While holding that the one time decision was reasonable, the court hastened to add that the holding was limited to the defendant's "single determination" made on that particular date and that it

> should not be read as suggesting the [the defendant's] change in its policy to allow service animals in the Commodore Lounge was not compelled under the ADA. To the contrary, it is clear that ultimately the entity

---

[2] Section 36.208 is the regulation implementing the "direct threat" defense and provides that a public accommodation is not required "to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of that public accommodation when that individual poses a direct threat to the health or safety of others."

9

>  asserting a "direct threat" as a basis for excluding
>  an individual bears a heavy burden of demonstrating
>  that the individual poses a significant risk to the
>  health and safety of others.  Indeed, CCE may well
>  have violated the ADA had it not changed its policy.

Id. at 1066 (internal citation omitted).

Similarly here.  Were Defendant to adopt a policy prohibiting all blind individuals from playing paintball at their facility, that may well violate the ADA.  The Court concludes, however, that on the date in question, the Maliszewskis made a reasonable decision, based upon the objective evidence before them, that it would pose a direct threat to the safety of others to allow the BISM group to play paintball.  Therefore, that one-time, on-the-spot decision was not a violation of the ADA.

The Court must also briefly address the issue of Defendant's failure to provide an effective means of communicating the contents of its waiver form.  Miriam Maliszewski testified that Route 40 Paintball Park now has a braille version of its waiver form available in its office.  The Court concludes that this satisfies the effective communication requirement of the ADA and there was no evidence presented from which the Court could conclude that Defendant will not continue to make that braille version of the waiver available.  Thus, any injunctive relief is unnecessary.

**IV. CONCLUSION**

Based upon these findings of fact and conclusions of law, the Court determines that Defendant is entitled to judgment as to all claims asserted against it. A separate order will issue.

```
               _____/s/_____
               William M. Nickerson
               Senior United States District Judge
```

DATED: March 21, 2013.